IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STEFANIE THOMAS, | CV. 05-463-PK |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| TRI-COUNTY METROPOLITAN SERVICE DISTRICT OF OREGON, | |
| Defendant. | |

PAPAK, Magistrate Judge:

      Plaintiff Stefanie Thomas fled this action against defendant Tri-County Metropolitan Transportation District of Oregon ("TriMet") alleging two claims of sexual harassment under Title VII, 42 U.S.C. 2000e, two claims of violation of Oregon's anti-discrimination statute, O.R.S. 659A.030, and a claim for common law negligence. Before the court is TriMet's Motion for Summary Judgment (No. 31), on all five claims for relief. Also before the court is Thomas's Motion to Strike the affidavit of Gregg McCurdy (No. 59). For the reasons set forth below,

Page 1 - OPINION AND ORDER

TriMet's Motion for Summary Judgment is granted in part and denied in part, and Thomas's Motion to Strike the McCurdy Affidavit is denied as moot.

SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains. See Fed. R. Civ. P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. See Celotex Corp., 477 U.S. at 322-23; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Harper, 877 F.2d at 731. The opposing party may not rest

Page 2 - OPINION AND ORDER

on conclusory allegations or mere assertions, see Taylor, 880 F.2d at 1045; Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at 1045.

## FACTUAL BACKGROUND

Because this is a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all inferences in the non-moving party's favor. Reeves v. Sanderson Plumbing, 530 U.S. 133, 150 (2000).

TriMet is a statutorily authorized mass transit district.  Most of TriMet's work force is unionized; Local 757 of the Amalgamated Transit Union ("the Union") is the exclusive bargaining unit for 2,200 or so of TriMet's approximately 2,600 employees.  The Union and TriMet operate together under a collective bargaining agreement that is known as the Working and Wage Agreement (WWA).  The WWA is a negotiated contract that governs various aspects of the working relationship between TriMet and its represented workers, including employee discipline.

The WWA makes employee discipline the province of TriMet.  Any discipline that is imposed, however, must be supported by "just cause."  Just cause encompasses not only a proper determination that an employee committed the conduct subject to discipline, but also requires that the level of discipline be appropriate to the offense.  Short of termination, discipline must be intended to correct the behavior, not punish the employee.  In addition, the discipline must be

progressive. In other words, aside from the few serious offenses that warrant immediate termination, TriMet must start at the bottom of the sanctions ladder and work its way up over time if circumstances warrant.

Employees who are dissatisfied with an action taken by TriMet have the right to file a grievance. Grievances are subject to review by a grievance-hearing panel or by an arbitrator. Discipline may be reduced, revised or eliminated, without recourse by TriMet.

TriMet has a well-established procedure for bringing forward complaints of discrimination or harassment. The procedures are made known to every employee through the human resources manual. TriMet provides mandatory Equal Employment Opportunity training to its supervisors and managers. In addition, TriMet provides its supervisor and managers a Respectful Workplace Conduct course that specifically addresses sexual harassment in the workplace.

Thomas was hired by TriMet as a helper in the Maintenance of Way division in June 1998. In March 2000, Thomas was accepted into TriMet's signals apprentice program. Thomas completed the program and became a signal technician. At all times relevant to this litigation Thomas was the only female employee working in the signals section.

Thomas's allegations involve conduct by two co-workers in unrelated incidents. Those co-workers are Chris Hunter and Jerry Waldner.

Chris Hunter

Chris Hunter was a signal technician like Thomas. During Thomas's apprenticeship, she

was frequently assigned to work with Hunter. During those times, Hunter was her mentor and was required to report to his supervisors on her progress.

Hunter has known Thomas and her family since before Thomas began working at TriMet. Thomas and Hunter saw each other outside of work for dinner and drinks. Sometimes those occasions included other co-workers. At times, while at work, Hunter would try to hold Thomas's hand or lay his head in her lap. In early 2003, Thomas claims she asked Hunter to stop. At some point after that, however, Thomas hugged Hunter when he was having some personal issues and, later, allowed Hunter to rub lotion on her sunburned back.

The first alleged incident of harassment occurred in March 2003. While playing pool after work with some co-workers, Jean Currie, one of Thomas's co-workers offered to set Thomas up with Currie's son. Apparently, Hunter overheard the conversation, became upset, and walked out without saying goodbye. The following Monday, Hunter asked Thomas "did you get some on Friday night?" When Thomas asked what he was talking about, Hunter replied angrily and loudly, "You're a skank! You're just a skank. You'll get what you deserve!" Hunter then stormed off.

Although Thomas interpreted Hunter's actions as extremely insulting and physically threatening, she was scheduled to take her journeyman exam in a few months and felt the need to just get along with Hunter and her other male co-workers. Thomas, therefore, decided to report the incident to the assistant supervisor, Roger Bell[1], hoping that he would be able to convince Hunter to leave Thomas alone. Bell tried to mediate the situation by asking Hunter to apologize to Thomas. Hunter apologized, but Thomas was dissatisfied, thinking the apology insincere.

---

[1]Bell is a union member with no authority to hire or discipline co-workers.

Page 5 - OPINION AND ORDER

A few days later, Thomas told Bell that she was dissatisfied with the outcome of the meeting. Bell told Hunter to knock it off, told Thomas that she shared equal blame for Hunter's behavior, and suggested that the two end their friendship entirely. Bell did not report the incident to anyone at TriMet.

In July, 2003, Hunter asked Thompson for sex. When she refused, Hunter became angry and told her she needed a counselor because she wouldn't "put out" for him. Thomas pinched Hunter on the arm. Hunter then responded by pinching Thomas on her breast, causing a black and blue mark.

Thomas again reported Hunter's conduct to Bell. Bell told Thomas that there was nothing more he could do and that she should report the incident to management. Thomas then complained to Kevin McCaughey, a supervisor in the Maintenance of Way section, who then reported the matter to Mark Larson, the Maintenance of Way section manager.

Larson immediately launched an investigation. Larson concluded that both Hunter and Thomas had acted inappropriately and issued each a written reprimand. The reprimand stated in part, "both you and [Hunter] had a level of responsibility for the situation." Thomas was upset by the result and refused to accept the reprimand. Thomas claims that she was told by Larson that if she did not accept the reprimand she would not be allowed to return to work. For this reason, Thomas accepted the letter of reprimand and did not file a grievance.

On January 28, 2004, around midnight, Hunter drove by Thomas's house in a TriMet vehicle and saw her boyfriend's car in the driveway. The next day at work, Hunter confronted Thomas and asked if she had done anything last night. When Thomas said no, Hunter stated, "you don't have to lie to me" and admitted driving by her home and seeing her boyfriend's car.

Page 6 - OPINION AND ORDER

When Thomas informed Hunter that it was none of his business, Hunter responded "at least you're getting some cock now." Thomas became frightened and felt physically threatened by Hunter. Thomas immediately reported the incident to McCaughey who reported it to Larson.

Larson instructed Hunter and Thomas to avoid contact and commenced an investigation. Despite Larson's instruction, Hunter attempted to contact Thomas in person and by phone over the next few days. Larson's investigation substantiated Thomas's allegations, including the first instances of alleged harassment that Thomas had previously reported to Bell. TriMet suspended Hunter for 40 hours. Hunter grieved the suspension and the grievance-hearing panel affirmed the suspension but reduced it to 23 hours.

On February 2, 2004, Thomas applied for and obtained a stalking order against Hunter from state court. Upon learning of the stalking order, TriMet informed Hunter that during the upcoming yearly job bid he would be required to use his seniority to bid out to another facility, ensuring that he would have no contact with Thomas. In violation of that directive, Hunter bid his usual location and hours that would overlap by three hours with Thomas's shift. Upon learning of this, TriMet required Hunter to use vacation for those overlapping hours so that he would be off premises at the start of Thomas's shift. The Union then requested another sign-up to allow Hunter to re-bid for a position at another location. TriMet allowed this request and Hunter successfully bid out of the location in which Thomas worked.

Jerry Waldner

Thomas's second allegation of sexual harassment involves co-worker Jerry Waldner, a non-supervisory maintenance employee. Waldner had worked for TriMet approximately eight years at the time of the alleged conduct.

In August 2003, Thomas was working on Saturday and entered the office area to pick up materials for her days work. After retrieving the materials, she sat at her desk and began checking her email. She heard someone call her name, but did not respond. When she heard her name again, she picked up her materials and left her cubicle. She saw Waldner, who was off-duty at the time, sitting at his desk. Waldner told Thomas he wanted to show her something on his computer. Waldner clicked on the mouse and pornographic pictures appeared on the screen. Feeling uncomfortable, Thomas left the building and went to the outdoor smoking area. Waldner showed up and began making small talk. He asked Thomas if he could tell her a secret. Thomas assented and Waldner leaned over closer, in a threatening manner, and said "I want you bad" and asked her to go with him to the boiler room. Thomas interpreted the statement to mean that Waldner wanted to have sex with her and she believed he would rape her.

Thomas immediately got into her van and called her supervisor, Keith Bounds. Bounds advised Thomas to lock the van and remain in an area where other people were around and assured her that he would send someone to help her. Bounds then contacted Tim Keller, the assistant supervisor, and asked him to meet Thomas. Keller promptly met Thomas and the two returned to the TriMet facility to make a report of the incident. Keller then tried to locate Waldner on the premises, but was unable to.

TriMet conducted an investigation and determined that Waldner had in fact acted inappropriately toward Thomas in the workplace and had violated TriMet's computer policy. Larson met with Waldner to discuss his findings and proposed discipline. Waldner was admonished and given a written reprimand. He was instructed not to engage in any similar or retaliatory conduct and warned that future conduct would lead to additional discipline up to and

including termination. Waldner avoided future conduct with Thomas.

Thomas was disappointed in the result and filed a grievance. The ATU president closed the grievance stating, "the District has done everything possible to remedy your situation in making the workplace safe for you."

In 1996, TriMet investigated an allegation by a co-worker that Waldner sexually assaulted her three years earlier. That same employee also filed a report with the Clackamas County Sherrif's Department. TriMet found no cause for termination or disciplinary action. TriMet advised Waldner to have no contact with the co-worker while on company time and company property.

## ANALYSIS

TITLE VII and ORS 659.030

Thomas's claims under Title VII, 42 U.S.C. 2000e, and ORS 659.030 are premised upon a hostile work environment theory. [2] A hostile environment exists under both Title VII and ORS 659.030 when an employee can show (1) that he or she was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an intimidating, hostile, offensive, or abusive working environment. Pavon v. Swift Transp. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999), citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57,

---

[2] Because ORS 659.030 is patterned after Title VII, both Oregon and federal courts have considered federal Title VII caselaw instructive when construing state law. *Montgomery v. J.R. Simplot Co.,* 916 F Supp 1033, 1038 (D Or 1994); *Harris v. Pameco Corp.,* 170 Or.App. 164, 176, 12 P3d 524, 532 (2000). A.L.P. Inc. v. Bureau of Labor and Industries, 161 Or.App. 417, *422, 984 P.2d 883, **885 (Or.App.,1999)("ORS 659.030 is patterned after Title VII and that we therefore consider federal cases 'instructive.'").

Page 9 - OPINION AND ORDER

67 (1986); Fred Meyer, Inc. v. Bureau of Labor & Indus., 152 Or. App. 302, 307, 954 P.2d 804, 807 (1998); Mains v. II Morrow, Inc., 128 Or. App. 625, 635, 877 P.2d 88, 93 (1994). In addition, the plaintiff must show that the harassment was "because of sex." Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001) (citations omitted).

Where, as here, harassment by a co-worker is alleged, "liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for co-worker's harassing conduct." Swenson v. Potter, 271 F.3d 1184, 1191-92 (9th Cr. 2001). In order to prevail, the plaintiff must prove that the employer was negligent. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759 (1998). In other words, the plaintiff must prove that the employer knew or should have known of the co-worker harassment but did not take adequate steps to address it. Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001). "If the employer fails to take corrective action after learning of the employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have adopted the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy." Swenson, 271 F.3d at 1192 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998).

The employer is not, however, liable for conduct of which it is unaware: "The employer's liability, if any, runs from the time it knew or should have known about the conduct and failed to stop it." Swenson, 271 F.3d at 1192 (quoting Ellerth, 524 U.S. at 759). Notice to the employer means notice to management or a supervisor. A supervisor is one who has authority to "hire, fire, or discipline employees, or recommend such action." Brooks v. City of San Mateo, 229 F.3d 917, 925 n. 6 (9th Cr. 2000) (citation omitted).

Page 10 - OPINION AND ORDER

Notice triggers the employer's duty to take prompt corrective action that is "reasonably calculated to end the harassment." Nichols, 256 F.3d at 875. This obligation consists of two parts: (1) "the temporal steps the employer takes to deal with the situation while it determines whether the complain was justified"; and (2) "the permanent remedial steps the employer takes once it has completed it's investigation." Swenson, 271 F.3d at 1192 (citations omitted).

Here, TriMet argues that summary judgment is appropriate because the corrective action taken by TriMet in response to the conduct by Hunter and Waldner was sufficient as a matter of law. In response, Thomas argues that the permanent remedial steps were not sufficient.[3]

The question of whether an employer's permanent remedial steps are reasonable turns on the ability of the remedy to accomplish two things: (1) "stop harassment by the person who is engaged in the harassment," and (2) "persuade potential harassers to refrain from unlawful conduct." Nichols, 256 F.3d at 875.

Hunter

TriMet was put on notice of Hunter's conduct when Thomas reported the problems to McCaughey, supervisor in the Maintenance of Way section, who then reported the allegations to Larson, the Maintenance of Way section manager. At that point, TriMet became obligated to take prompt corrective action "reasonably calculated" to end the harassment. Nichols, 256 F.3d at 875. After conducting an investigation, Larson issued a reprimand to Hunter and to Thomas, stating that both Hunter and Thomas had a level or responsibility for the situation. The content of the two letters was exactly the same. Thomas claims that when she initially refused to accept the reprimand she was told that if she did not accept she would be allowed to return to work.

---

[3] Thomas does not dispute the sufficiency of the temporal steps.

Page 11 - OPINION AND ORDER

The court finds that there are material questions of fact that preclude summary judgment on Thomas's claims under Title VII and ORS 659.030 arising out of the conduct by Hunter. Specifically, there is a question of fact as to whether TriMet was correct in treating the actions of Hunter and Thomas as equivalent. If Thomas was unfairly or improperly charged with equal responsibility for the alleged harassment, that fact may have emboldened Hunter to continue his conduct toward Thomas.

Waldner

As noted above, Thomas's claim regarding Waldner involves only one instance of conduct: the day Waldner showed Thomas pornographic images on his computer and then told her "I want you bad" and asked her to go with him to the boiler room.[4] TriMet was put on notice of the alleged conduct when Thomas reported the incident to her supervisor, Keith Bounds. Bounds took immediate action to ensure Thomas's safety and TriMet commenced an investigation. Based on that investigation, which corroborated Thomas's allegations, TriMet admonished Waldner, placed a letter of reprimand in his file, and instructed him that similar or retaliatory conduct would lead to further discipline, including and up to termination. Thomas has presented no evidence that Waldner had any inappropriate contact with her in the time since. As a matter of law, TriMet's permanent remedial steps were sufficient, and TriMet is entitled to summary judgment on Thomas's Title VII and ORS 659.030 claims arising out of the conduct by Waldner.

---

[4] The alleged harassment by Waldner happened after the alleged harassment by Hunter. There is no evidence of a relationship between the two men, and nothing in the record supports a suggestion that Waldner was aware of the incidents involving Hunter and became emboldened by TriMet's disciplinary response.

Page 12 - OPINION AND ORDER

NEGLIGENCE

Thomas alleges that at some time prior to August 7, 2004, TriMet learned that Waldner had a history of sexually harassing women. Despite this knowledge, Thomas alleges, TriMet employed or continued to employ Waldner, allowing him to work with female TriMet employees. Finally, Thomas alleges that TriMet failed to warn Waldner that behavior of this type would not be tolerated and therefore became an enabler in Waldner's sexual harassment of Thomas. TriMet moves for summary judgment on this claim, arguing that there is no evidence to support Thomas's allegation that TriMet knew or had reason to know before Thomas's incident with Waldner that Waldner had a history of sexually harassing women.

The undisputed evidence is that in 1996 TriMet learned that Jenkerson complained that Waldner had assaulted her three years prior, outside of work, and that she did not feel safe working with Waldner. No criminal proceedings were ever brought. TriMet investigated the allegations, found no cause for termination or disciplinary action, and strongly recommended to Waldner that he have no contact with Jenkerson during company time and on company property. Thomas has failed to present any evidence showing that TriMet knew Waldner "had a history of sexually harassing women." Accordingly, TriMet is entitled to summary judgment on Thomas's negligence claim.

MOTION TO STRIKE

Thomas has moved to file the affidavit of Gregg McCurdy, filed in support of TriMet's Motion for Summary Judgment. Because the court did not rely on the McCurdy Affidavit in reaching any of the conclusions set forth above, the Motion to Strike is denied as moot.

CONCLUSION

For the reasons set forth above, TriMet's Motion for Summary Judgment (No. 31) is granted in part and denied in part as follows: (1) TriMet's Motion for Summary Judgment is DENIED with respect to Thomas's claims under Title VII and ORS 659.030 relating to alleged harassment by Chris Hunter; (2) TriMet's Motion for Summary Judgment is GRANTED with respect to Thomas's claims under Title VII and ORS 659.030 relating to alleged harassment by Jerry Waldner; and (3) TriMet's Motion for Summary Judgment is GRANTED with respect to Thomas's claim for Negligence. Thomas's Motion to Strike the affidavit of Gregg McCurdy (No. 59) is DENIED as moot.

Dated this 22nd day of November, 2006.

    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge